RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JEROME RAYBON,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

No. 16-2522

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:03-cr-50064-1; 2:16-cv-12174—Bernard A. Friedman, District Judge.

Decided and Filed:  August 14, 2017

Before:  NORRIS, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

---

**COUNSEL**

---

**ON BRIEF:**  Joan E. Morgan, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Flint, Michigan, for Appellant.  Shane Cralle, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.  Petitioner Jerome Raybon appeals the district court's denial of his 28 U.S.C. § 2255 motion, claiming that his Michigan offense of assault with intent to do great bodily harm no longer qualifies as a crime of violence under the Sentencing Guidelines after *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson 2015*).  We conclude that his claim is not timely under 28 U.S.C. § 2255(f)(3).

## I.

In 2004, during the pre-*Booker* era when the Sentencing Guidelines were deemed mandatory, *see United States v. Booker*, 543 U.S. 220, 233 (2005), Raybon pleaded guilty to distributing more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). As part of his plea agreement, Raybon agreed to be "held accountable for between 50 and 150 grams of cocaine base which results in a base offense level of 32." Raybon further agreed that he qualified as a career offender under the United States Sentencing Guidelines, U.S.S.G. § 4B1.1, based on a prior drug trafficking conviction and a conviction for assault with intent to do great bodily harm less than murder. The career offender designation increased his guidelines range to 262 to 327 months' imprisonment (from 140 to 175 months).[1] The district court sentenced Raybon to 295 months' imprisonment. Raybon appealed. This court affirmed based on an appeal waiver in the plea agreement.

Ten years later, under a different regime of "effectively advisory" Guidelines, *see Booker*, 543 U.S. at 245, Raybon moved to vacate his sentence pursuant to § 2255 based on *Johnson 2015*. *Johnson 2015* invalidated the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), as being unconstitutionally void for vagueness.[2] *Johnson 2015*, 135 S. Ct. at 2557. Raybon argued that his predicate conviction for assault with intent to do great bodily harm no longer qualified as a crime of violence under an identically-worded

---

[1]More specifically: without the career offender designation, Raybon's offense level would have been 32 and his criminal history category would have been V. After a three-point reduction for acceptance of responsibility, his offense level would have been 29. Raybon's sentencing range would have been 140 to 175 months. With the career offender designation, Raybon's offense level was raised to 37 and his criminal history category became VI. After a three-point reduction for acceptance of responsibility lowered his offense level to 34, the resulting sentencing range was 262 to 327 months.

[2]Section 924(e) of the ACCA provides that a person who violates 18 U.S.C. § 922(g) and who "has three previous convictions" for "a violent felony" "committed on occasions different from one another" shall be imprisoned for a minimum of fifteen years and a maximum of life. A "violent felony" is defined as "any crime punishable by imprisonment exceeding one year" that:

    (i)      has as an element the use, attempted use, or threatened use of physical force against the person of another [elements clause]; or

    (ii)    is burglary, arson, or extortion, involves use of explosives [enumerated clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [residual clause] [.]

§ 924(e)(2)(B).

residual clause in the career offender guideline, U.S.S.G. § 4B1.2(a)(2).**3** The district court denied the motion as untimely, because it perceived Raybon's argument as actually based not on *Johnson 2015*, but on *Johnson v. United States*, *Johnson 2010*, 559 U.S. 133 (2010) (*Johnson 2010*), which held that the term "physical force" in the identically-worded elements clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), means *violent* force. 559 U.S. at 140. The district court held that although Raybon mentioned *Johnson 2015* and asserted that it applied to his case, he basically argued that his assault conviction did not satisfy the elements clause of U.S.S.G. § 4B1.2(a)(1) because Michigan law does not require proof of "the use, attempted use, or threatened use of physical force" and was not one of the four enumerated offenses listed in U.S.S.G. § 4B1.2(a)(2). Because Raybon's argument "focuse[d] on other clauses that were not at issue in *Johnson* [*2015*]," the district court held that his claims should have been raised in 2006, when his conviction became final, or at the latest in 2010, after *Johnson 2010* was decided. The district court also ruled on the merits, holding that assault with intent to do great bodily harm was a crime of violence under the elements clause of U.S.S.G. § 4B1.2(a)(1). Raybon appealed, and the district court issued a certificate of appealability.

## II.

This court reviews the district court's denial of a motion to vacate under § 2255 de novo. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

## A.

We agree with the district court that Raybon's § 2255 petition was untimely, but follow a different analytical path. A § 2255 motion must be filed within one year of "the date on which

---

**3**U.S.S.G. § 4B1.2(a) (2004) provided as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another [the elements clause], or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives [the enumerated clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the residual clause].

Application Note 1 states that "crime of violence" also includes "aggravated assault." § 4B1.2(a) cmt. n.1 (2004).

the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). A conviction becomes final upon conclusion of direct review. *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004). If the defendant takes a direct appeal to the court of appeals, the judgment of conviction becomes final after the ninety-day period to file a petition for writ of *certiorari* expires. *Id.* Here, the district court entered judgment on September 1, 2004. Raybon appealed. This court entered its order on November 4, 2005, so the ninety-day period to file a petition for writ of *certiorari* expired on February 2, 2006. Thus, Raybon had until February 2, 2007, to file his § 2255 motion. But he did not file it until June 14, 2016. His petition is therefore untimely unless he satisfies one of the exceptions found in § 2255(f).[4]

Raybon asserts that his petition is timely under § 2255(f)(3), which provides that a § 2255 petition may be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3). Raybon filed this petition on June 14, 2016, within one year of the Supreme Court's decision in *Johnson 2015*, which was decided on June 26, 2015.

*Johnson 2015* held that the residual clause of the ACCA is unconstitutionally vague because it "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson 2015*, 135 S. Ct. at 2557. In *Welch v. United* States, the Supreme Court held that *Johnson 2015* announced a new substantive rule that has retroactive effect in cases on collateral

---

[4]28 U.S.C. § 2255(f) provides that:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

review. 136 S. Ct. 1257, 1265 (2016). *See also In re Watkins*, 810 F.3d 375, 379, 382 (6th Cir. 2015) (same; issued prior to *Welch*).

*Beckles* decided that *Johnson 2015* does *not* apply to the *advisory* sentencing guidelines. *See Beckles*, 137 S. Ct. at 894. And whether it applies to the mandatory guidelines, which contain identical language as the ACCA provision at issue in *Johnson 2015*, is an open question. Justice Thomas, writing for the majority, explicitly and repeatedly stated that the Court was not addressing the pre-*Booker*, mandatory Guidelines scheme. And Justice Sotomayor made this point clear in her concurring opinion (without objection from the majority): "The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [*Booker*] . . . may mount vagueness attacks on their sentences." *Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring in the judgment). Echoes of this sentiment are also found in *Johnson 2015* and *Welch*. *See Johnson 2015*, 135 S. Ct. at 2561 (rejecting the government's argument that it was placing textually similar laws into "constitutional doubt"); *Welch*, 136 S. Ct. at 1262 (stating that *Johnson 2015* "cast no doubt" on laws using similar language but that required an evaluation of the particular facts of the case).

Because it is an open question, it is *not* a "right" that "has been newly recognized by the Supreme Court" let alone one that was "made retroactively applicable to cases on collateral review." *See* § 2255(f)(3). *See generally Tyler v Cain*, 533 U.S. 656, 663-64 (2001) (holding that "made" means "held" under identical language in § 2244(b)(2)(A) and that it must be held retroactive by the Supreme Court).**⁵** Thus, as recently explained by a district court addressing the identical issue presented here:

> The analysis turns . . . to whether the holding of *Johnson* [*2015*] established the same right that Petitioner seeks to assert in this case. I t is clear that it does not, as *Johnson* [*2015*]'s holding was limited to the ACCA and did not extend to other legal authorities such as the Sentencing Guidelines. *Welch* specifically described the substantive right established by *Johnson* [*2015*] as one relating to the ACCA, stating that *Johnson* [*2015*]: "changed the substantive reach of the Armed Career

---

**⁵**That holding need not be express, but may be made through "multiple holdings that logically dictate the retroactivity of the new rule." *Watkins*, 810 F.3d at 381 (quoting *Tyler v. Cain*, 533 U.S. 656, 668 (2001) (O'Connor, J., concurring)).

Criminal Act, altering the range of conduct or the class of person that the Act punishes." *Welch*, 136 S. Ct. at 1265 (internal quotation marks omitted). *Welch* also stated that *Johnson* [*2015*] "cast no doubt" on laws using similar language but that required an evaluation of the particular facts of the case. *Welch*, 136 S. Ct. at 1262. *Johnson* [*2015*] itself rejected arguments by the Government that it was placing the other laws textually similar to the ACCA into "constitutional doubt." *See Johnston* [sic] [*2015*], 135 S. Ct. at 2561.

*Mitchell v. United States*, No. 3:00-CR-00014, 2017 WL 2275092, at * 4 (W.D. Va. May 24, 2017) (footnotes omitted). In other words, "[b]ecause the Supreme Court has not decided whether the residual clause of the mandatory Sentencing Guidelines is unconstitutionally vague—and did not do so in *Johnson* [*2015*]—Petitioner's motion is untimely under § 2255(f)(3) . . . ." *Id.* at \*5; *see also id.* at * 7 (holding that the petitioner's challenge to his sentence under the mandatory Guidelines were procedurally barred by §§ 2255(f)(3) and 2255(h)(2) because *Johnson* [*2015*]'s holdings extend only to individuals convicted under the ACCA; but not issuing a final order until the Fourth Circuit issues its opinion on the same questions in *United States v. Brown*, Case No. 16-7056, argued May 11, 2017). *See generally Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (stating that § 2255(f)(3) is clear—relief is available one year after the Supreme Court initially recognizes the right).

Stated differently, Raybon's untimely motion cannot be saved under § 2255(f)(3) because he "is asking for the recognition of a new right by this court—that individuals have a Constitutional right not to be sentenced as career offenders under the residual clause of the mandatory Sentencing Guidelines." *Mitchell*, 2017 WL 2275092, at \*3.[6] *See id.* at \*5; *Linder v. United States*, No. 5:16-cv-00018-RLV, 2017 WL 2190067, at * 3 (W.D. N.C. May 18, 2017) (holding in abeyance the petitioner's § 2255 motion pending Fourth Circuit's decision in *Brown*); *Hodges v. United States*, Case No. C16-1521JLR, 2017 WL 1652967, at \*3 (W.D. Wash. May 2, 2017) (holding that the petitioner's collateral attack on the residual clause in U.S.S.G. § 4B1.2(a)(2) did not meet the requirements of § 2255(f)(3) "[u]ntil further pronouncement of the Supreme Court concerning the applicability of *Johnson* [2015] to the Guidelines as they were applied prior to *Booker*"); *United States v. Russo*, No. 8:03CR413, 2017

---

[6]This conclusion was foreshadowed in *In re Embry*: "if the *Pawlak* rule is distinct from the *Johnson* [*2015*] rule, [the petitioner in a successive § 2255 motion] has a problem because the Supreme Court has not yet recognized this rule or made it retroactive." *In re Embry*, 831 F.3d 377, 379 (6th Cir. 2016).

WL 1533380, at *2-4 (D. Neb. Apr. 27, 2017) (rejecting the petitioner's § 2255 petition seeking to extend the rule in *Johnson 2015* to his 2004 sentence under the mandatory guidelines, stating that "[b]ecause the plain language of § 2255(f)(3) reserves the creation of such a rule to the Supreme Court, the Defendant may not rely upon § 2255(f)(3) for the filing of his § 2255 Motion, and the § 2255 Motion is time-barred"); *but see Reid v. United States*, No. 03-CR-30031-MAP, 2017 WL 2221188, at *5 (D. Mass. May 18, 2017) (holding that *Beckles* does not apply to pre-*Booker* sentences imposed under mandatory Sentencing Guidelines and "[t]he Supreme Court's *Johnson* precedents make clear now that the court's employment of the Career Offender provisions of the Guidelines at the 2004 sentencing violated the Due Process Clause of the Fifth Amendment"; granting the petitioner's § 2255 motion without discussion of § 2255(f)(3)); *United States v. Tunstall*, No. 3:00-cr-050, 2017 WL 2619336, at *5-6 (S. D. Ohio June 6, 2017) (magistrate judge's report and recommendation) (finding that *Johnson 2015* applies to petitioners who had their sentence enhanced under the mandatory guidelines and recommending that the petitioner's § 2255 successive petition be granted on the merits).

**B.**

Although Raybon's § 2255 motion was untimely, we can also decide this issue on the merits. *See Pough v. United States*, 442 F.3d 959, 965 (6th Cir. 2006) (holding that a district court can avoid a statute of limitations question if it would be easier to simply deny relief on the merits). Raybon argues that assault with intent to do great bodily harm less than murder is no longer a crime of violence under U.S.S.G. § 4B1.2(a)(2) because the second element—intent to do great bodily harm less than murder—does not require proof of actual physical injury. According to Raybon, Mich. Comp. Laws § 750.84(a) is a simple assault statute that requires some evidence of intent to do great bodily harm, but does not require the actual use, or even threatened use, of physical force capable of causing injury to another person.

Assuming the residual clause is void, and applying the "categorical approach" because the Michigan statute is not divisible, *see United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017), we conclude that Raybon's conviction still qualifies as a crime of violence under the elements clause. First, it has as an element the use, attempted use, or threatened use of physical force. As noted above, physical force means "*violent* force—that is, force capable of causing

physical pain or injury to another person." *Johnson 2010*, 559 U.S. at 140. Although the statute does not otherwise define what conduct it prohibits, the statute in effect when Raybon was convicted proscribed an "[a]ssault[] [of] another with intent to do great bodily harm, less than the crime of murder." Mich. Comp. Laws § 750.84(1)(a).**7** The Michigan courts have held that this requires "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *People v. Brown*, 703 N.W.2d 230, 236 (Mich. Ct. App. 2005). It is a specific intent crime. *People v. Parcha*, 575 N.W.2d 316, 318 (Mich. Ct. App. 1997). It requires "an intent to do serious injury of an aggravated nature," *Brown*, 703 N.W.2d at 236, but an actual injury need not occur, *People v. Dillard*, 845 N.W.2d 518, 522 (Mich. Ct. App. 2013), *abrogated on other grounds by People v. Barrera*, 892 N.W.2d 789 (Mich. 2017). The offense is thus context-specific; although any injury inflicted by the defendant is "not *necessarily* proof of any intent beyond that necessary to inflict the particular injury[,] . . . the extent of any injury . . . can nevertheless be strongly probative of the intent to cause the requisite quantum of harm." *Id.*

"Physical force against the person of another" means "*violent* force," which means "force capable of causing physical pain or injury to another person." *Johnson 2010*, 559 U.S. at 140. That sounds a lot like "great bodily harm," which means "force or violence to do corporal harm." Contrary to his assertion, Raybon could not have been convicted of nonviolent assault because the crime he was convicted of included as an element an intent to do great bodily harm. In fact, the Michigan Model Criminal Jury Instruction for assault with intent to do great bodily harm defines "great bodily harm" as any "physical injury that could *seriously harm the health or function of the body*." Mich. Crim. J.I. 17.7(4) (emphasis added). Thus, as the district court held, Raybon's crime under Mich. Comp. Laws § 750.84 qualifies as a crime of violence under the elements clause because "an element of his assault conviction was the use or threat of the type of force required by *Johnson 2010*." *See generally Harris*, 853 F.3d at 321-22 (noting that "[t]he categorical approach doesn't require that *each* element of an offense involve use of force; it requires that the offense *overall* include use of violent force"; holding that Michigan felonious

---

**7**The current version, effective April 1, 2013, is not materially different. *See* Mich. Comp. Laws § 750.84(a)(1) (2013).

assault involves violent force "because it proscribes not common law assault but common law assault *with a dangerous weapon*").

While we must consider the least objectionable conduct that would violate the statute, *see United States v. Amos*, 501 F.3d 524, 527 (6th Cir. 2007), "there must be a realistic probability, not a theoretical possibility" that Michigan would apply the statute to conduct that does not satisfy the elements clause, *Harris*, 853 F.3d at 322. Raybon has not provided any examples where Michigan courts have swept nonviolent simple assaults within the reach of this statute. This forecloses his claim.

Because we conclude that Raybon's conviction under Mich. Comp. Laws § 750.84(1)(a) qualifies as a crime of violence, we do not consider the United States' alternative argument that the conviction is a crime of violence under the enumerated offense clause.

**III.**

For the foregoing reasons, the district court's judgment is **AFFIRMED**.